Next case is v. Boston Scientific, number 207-1385. V. Boston Scientific, number 207-1385. Are we ready? Is that the child we're commencing with, Dr. James? That's your daughter's. It's a child. John. Thank you. Thank you, Your Honor. Thank you, sir. Are we ready? May it please the court. Thomas Mundell on behalf of the appellant, Dr. David John. I know the court is fully familiar with the case, and has read the brief, so I will go straight to what I think are some of the salient issues here. I'd first like to discuss the Phillips case, which I know the court is familiar with. Both parties cite to Phillips. They rely on language in Phillips. Let me tell you what the problem is here. I found your brief very confusing. Part of the confusion is that we really don't know why the parties stipulated that the accused's device doesn't print. And as we've said in a while, and we've said in some of these other cases, without knowing what's going on, it's very difficult for you to create instruction. And that seems to be the case here. You've got half a dozen or maybe more objections to the district court's claim construction. I take it your position is that if we disagree with the district court on any one of them, then we should reverse and remake or further proceed. Why, under the claim construction, does this device not print? What is the reason? For example, what difference does it make whether this is tubular? How do we know what the significance of this tubular device? I think that's an excellent point, Your Honor. In fact, I don't think that the issue of tubularness versus non-tubularness has anything to do with infringement. And similarly, there's another word in there, vertical. A vertical extension of space as opposed to a ring of space. That's another one that I don't think is pertinent to the issue of infringement. Well, then we should have briefed it. Yes, I agree, Your Honor. Which construction does print that? The ones dealing with adjacency, that the connecting columns must only connect adjacent extension columns. The word solely was inserted into the claim language that the two columns each must consist only or solely of either connecting struts or extension struts. And the word unattached, which the court inserted into the description of the connecting struts. So if you look at page 19 of the red group, the instrument that's this diagram here, is if you consider the blue to be the connecting struts, then they wouldn't be infringing because of the non-parallel requirement, right? Not exactly, I don't think, Your Honor. I think what they want to do is eliminate that squiggly or sinusoidal section between them and say that these are just the connectors. No, no, I understand you may disagree, but just go with my hypothetical. If they're right in identifying, marking the blue here as being the connecting struts, then there's no infringement because they're parallel and the claim requires non-parallel connecting struts, right? It's not so much non-parallel, Your Honor. It's that they connect. So what's wrong with what I said? Let me put it differently. They're offset. The connectors are offset. You connect one extension strut pair over here on the left and another one on the right, and they're not on the same longitudinal axis. So it's not the lack of parallelism here. It's the fact that they're offset there because in prior exchanges... It's easier when there's no infringement. There would be no infringement if you accept their claim construction because they have columns that they say consist of connecting columns that also contain an expansion element. OK, so in these micro-expansion elements, what they label, that's a top, right? Yes, Your Honor. And so it's what you're saying that there is the correct claim construction would allow what's marked in red there to be part of the connector? Yes, Your Honor. Yes, that's our position. So what's marked in red in that column B is also an expansion strut, right? Well, that's what they say. And you don't say that? That's right, Your Honor. What would that be if it's not an expansion strut? It's a sinusoidal connector, Your Honor. And our patent teaches that you can have connectors that are four segments, sinusoidal, squiggles. They can be in any kind of arrangement that you like. But what we say they've done here is- Let me see. Doesn't your patent require an expansion strut column and a connecting column? Absolutely, Your Honor. Separate from each other? Yes, Your Honor. Where do you get them? Yes, Your Honor. Right. So why is the district court's interpretation incorrect? If I may- Where do you get it? I'm here to tell you. The district court, it seems to me, imported limitations from the specification from the preferred embodiments into the language of the claims. It said that the claims had- that the connecting columns had to consist solely of connecting struts. So let's stick with solely. Yes. Why doesn't this infringe under the solely construction? Is that because the column has something other than connecting struts in it? Yes, Your Honor. Under interpretation, yes, it does. Because these sinusoidal connectors can also perform the function of expanding. So they can be expansion struts as well as connecting struts. So the column wouldn't be solely connecting struts. It would have connecting struts and expansion struts. Same piece of metal would perform the same task. So your interpretation is that something either has to be- can be both a connecting strut and an expansion strut? Yes, Your Honor. And their construction is that it can't be one or the other. Yes, Your Honor. Is that basically what we're talking about? That's part of it. That's one of the issues. Another one is that they say that the connecting struts must be unattached to each other. And in just looking at this diagram, you can see that if you accept our proposition that this is a connecting strut starting in blue and then circling down and ending in blue, then you see another one coming up directly following that. They're all connected or overlapped. And in the preferred embodiments, the drawings of the preferred embodiments in our patent, these connectors are shown discrete. That's basically the same issue. I mean, the whole thing turns on whether the red part here can be considered to be a connecting strut or whether it's an expansion strut. That's basically the issue. I suppose in a sense it is, Your Honor. But the more specific- and that's when you get to the infringement analysis, which really is part of plate construction, but it doesn't form the background. You guys have set this case up, so it's extremely difficult to understand because it's very abstract. I understand. I understand. It seems to me, to follow up on Judge Jack's point, that what you're doing is not uncommon these days, but it's very difficult, I think, in the program, and that is to sort of confuse and conflate plate construction with infringement questions. It seems to me that what has happened in these days is that patentees want to use the claim construction process to have the court rewrite the claim in a way that doesn't read on the accused. And the accused want the court to rewrite the claim so that it's... But you get my point, and it's just to swallow up the infringement question with the claim construction question so that it can get resolved and quickly result in a summary judgment and come up here and get reviewed. Here we've got such a level of abstraction that it makes it virtually impossible for us to do anything that gives us any confidence that we're going to resolve this in a way that won't result in it coming back to us later, after it goes back and after the infringement question then really does present itself, because we have no idea what it is that is involved in the infringement question. Normally, if you have four different elements and four questions on claim construction, and there is a stipulation of infringement, it means that, as a patentee, you have to convince us all four of them are incorrect. After all, if one element is not infringed, then there's no infringement. But here, because of the stipulation, as I understand it, all we have to do is find that one of these is wrong, and then the stipulation is no longer valid. And reversal would be mandated, Your Honor. We actually did address this. We did address this question very specifically, Your Honor, in our opening brief. We discussed the accused device, the express step, and we explained how Boston Scientific's claim constructions are litigation-driven, to try to bring that express scope outside that scope. But I think we did explain to the court how reversal would manipulate the question of infringement. My question to you is, do you agree that we should confront, if we conclude that the affidavit is correct, that in this micro-policy, that we have to consider the grid, the expansion of the struts, and not connect the struts? No. No, why not? Absolutely not, Your Honor. We're here to construe the claim legislation. No, I'm not interpreting the answer to my question. Why not? Because we, the parties, have stipulated that to the entry of summary judgment, based on this claim construction, if the claim construction is incorrect, the court must reverse. We're here for claim construction, not infringement. Not any one element. Any one element. If the court's claim construction is incorrect, the stipulation of the parties is that- You're insisting that we do it in the abstract. Maybe we decide that that's not appropriate. Well, I don't think I am, Your Honor. You certainly are. You're refusing to answer the question of whether we consider, in this column, the red not to be connecting struts, whether we should affirm it. You say no. We've got to consider the thing in the abstract. Presumably, under your view, if we were reading with you on tubular, even though you say it doesn't make any difference in capital rules. On tubular, Your Honor, I will stipulate today that you don't have to reverse it. The same thing on the word vertical. But on adjacency, on solely, and on unattached, any one of those would require a reversal. For the reasons set forth in our opening brief where we explain how these terms tie into the accused device, we do that in our opening brief, the early stages of the brief. So I am answering the question, but I'm not conceding that we conduct the infringement analysis and then we don't have to get to whether the plate construction is correct. We have to get to whether the plate construction is correct. Let me try to understand. Are you saying that if we find that it's not a vertical extension, we can move forward? No. I'm saying that the issue that we've raised, whether it's a vertical extension, a space ring extension, or vertical, we will abandon that contention for courtesy. What are you keeping? Solely? Solely, unattached, and adjacent. Those three are the big three. And I wish, looking back on it, I had a brief tubular and vertical, but it was part of the argument along the way. And here it is, so I continue that argument. The term of art in this particular... I'm sorry, your Honor. Is the vertical term of art in this particular size? No. Vertical seems to be an assertive or basic term. Yes. Vertical relates to how the columns are laid out when you cut the stem and you flatten it out. So it's really not necessary to talk about vertical or non-vertical. The other side in their opposition brief pointed out that if you hold the stem this way, they look like they're ringing horizontally. So I would find that out. I'll drop that issue. It's not important. Vertical relates to which orientation? I think it relates to the columns, both kinds of columns, where columns that if you cut the stem longitudinally and flatten it out, you see the columns look like they're vertical extensions of space in a two-dimensional representation. In the three-dimensional stem, they ring the circumference of the stem. And whether it's vertical or, you turn it this way, it's horizontal, it is of no significance. So we're not pressing that issue. I would like to address the plate construction issues if I can. I haven't had a chance to do that at all. Well, why don't you take two minutes on that? Thank you, Your Honor. The Phillips case, Your Honor, both cases cite to it, but neither of us discuss its facts. And in the Phillips case, the question was whether internal steel baffles extending inwardly from steel walls could be perpendicular. District Court has said no, because every textual reference in the specification in the document showed baffle deployment other than 90 degrees. And the three-judge panel affirmed that. Noting that 90-degree panels appeared in the prior art as well. And this specification repeatedly referred to the ability of baffles to deflect projectiles. At this court, and both, reversed. The Phillips is very much like this case. Because here, the District Court relied on the fact that all drawings of the volumes showing the connecting columns and the expansion columns only showed columns which only contained either connecting struts or expansion strut pairs. And the connecting struts appeared to be unattached. In fact, they aren't attached, because these struts are made of a continuous piece of metal, so they're attached through the other columns. But nevertheless, they appear discontinuous. And that all drawings and all descriptions of the volumes described the connecting columns as connecting adjacent expansion columns. The Phillips teaches that this is insufficient, just as Phillips reversed in that case, where the District Court relied upon the fact that the description of the preferred embodiments all showed a particular orientation. The court says that's just not sufficient to import those words into the claim language. As Phillips emphasizes, you do not confine the invention to the embodiments, you do not import limitations from the specification of the claims, and that the claim language itself is paramount. It's always a test of how well skilled in the art that have read the claims. Now, when you look to that test, you see that once skilled in the art would not have added the word solely to the description of connecting columns and expansion columns, because the fourth shows connectors and expanders overlapping in the same column. That's in the appendix, page 1022. And also attached, in a sense... We don't even know what solely means. Now, how are we supposed to do this? You give us a word, you ask us to construe the extract, we construe it, send it back, and you'll be back here again arguing about what solely means. I don't think so, Your Honor. No, I really don't. And solely is the word selected by my learned friend over here, not us. Our patent just says, a column formed of so-and-so. They say a column formed solely of them. That's their word, not mine. I'm not responsible for that. I'm fighting here to get a team out of it. You are responsible, because you've added in your stipulation saying that if we disagree on the word solely, we should reverse. We don't know what the consequences of that are, or what the context of it is. It seems to me you've got not only something which creates difficulty for us, but perhaps even creates Article III problems. Because you're asking us to render an abstract opinion on these claims construction without knowing what the actual context is, or what the consequences are of engaging in a particular construction. Well, on solely, Your Honor, the consequences are that their device has metal fragments in their connector columns that perform the expansion role. So they can say that... Well, that's why I was asking you the question before. If in this diagram you consider the grid not to be a connecting strut column, whether that means it's not infringing I think that's right. It's not infringing? Yes. Oh, okay. But maybe I missed your point earlier on, and I apologize, of course. If that's our stipulation, that if that... No, it's not your stipulation. Your stipulation is directed to all of the claim construction. I mean, if I understand what you're saying now, is that if in this microcolumn we consider the grid not to be a connecting strut that the device is not infringing? Right. I think it has to be the case, because if it doesn't contain all the claim limitations, then it's not going to infringe. Okay. Two minutes are up. We'll reserve two minutes of your time. All right? Let's give Mr. Wolfman additional five minutes. Thank you. Really didn't get to the point of clarity. I understand. Thank you, Your Honors. May it please the Court, Matthew Wolfe for Boston Scientific Corporation. Judge Dyke was absolutely correct in his assessment of the status of this case. Fundamental fighting issue... You did equal responsibility for presenting to us this question. In my view, it's inappropriate. Your Honor, I... We cannot, as we've said in the law, we cannot do these claim constructions in the past way without knowing what the consequences are. I understand that, Your Honor, and I accept that responsibility. Talking about the history of the case, upon the completion of the claim construction, the plaintiffs came to us and said, here's a proposed stipulation. As a defense attorney, being told that the case can be over, if I agree to this document, it's a difficult decision to say, no, we need to structure it a little differently, and then maybe we can get it out of here. So I accept the responsibility, and I apologize to the court if it puts the court in an awkward position, but obviously, as a trial counsel, my first and foremost obligation is to end the case for my client without a finding of liability, and that's what the stipulation presented by Dr. John did. But certainly I will be mindful in the future that it does not present to the court a particularly helpful structure for resolution on appeal. Your Honor was absolutely correct that the question is, how do we characterize the micro-expansion column? What Judge Phillips did down below was construe the claims consistent with common understandings in a way that made it clear to the plaintiff that there's no way that what is clearly an expansion column, and if we ever got to the infringement phase, everyone would acknowledge that an expansion column also contained or also could be characterized as containing connecting struts or be a connecting column. Last week, this court in O2 Micro v. Beyond Innovation issued an interesting opinion, and one that drew a useful distinction between on the one hand disputes about meaning of claim terms and on the other hand disputes about claim scope. And the court found in that case that it was first and foremost a dispute about claim scope. In this situation, I believe it's first and foremost a dispute about claim terms. And the reason I say that is because expansion strut and expansion column and connecting strut and connecting column are terms of art. They are terms that are commonly used by stent architects. They are commonly used by those that design these devices. They're well known throughout the industry. They have common understandings. And in this case, we have something that I think is very unusual. It is not the typical case where the patentee has written a primer specifically for the defendant, defining many of the very terms that he now seeks to change the definition of. The primer that we cite at some length in our brief, and cited as well as the district court below, was written by Dr. John for Boston Scientific. And if I may quote, this is from A1630, the purpose of this primer is to specifically inform the stent R&D engineers and product planners of Boston Scientific Corporation and its subsidiary, Symed, in other words, the defendants in this case, thereby giving the R&D and product planning people a better understanding of the basic elements of the stent. This was not a discussion, unlike some of the cases cited by plaintiff, of a specific invention. This is not a situation where we're pointing to plaintiff's writing to say, see, he described his invention as narrow in this one context, and now he's trying to expand it in a patent to be broader. That, of course, is perfectly appropriate, that there not be a contiguity between public discussions of a particular research and development project versus the patent that embodies that project. This is a primer. This is, in essence, a dictionary specific to the R&D industry, the stent R&D industry, and specifically given to my client. Lest there be any doubt, at A1633, in a section entitled Expansion Column versus Connector Column, it states, a stent, as a columnar or tubular structural architecture, has two basic elements as the building blocks. The most dominant element is the expansion column, and the less obvious but critical element that plays the stent DNA is the connector column. There are two of the four terms at issue here, the basic building blocks of stent that the vast majority of stent patents discuss, the vast majority of stent R&D engineers understand. And what Dr. Zhang, in this case, is trying to do is redefine the commonly understood definitions of these terms. Now, of course, a patentee is entitled to do that, but he must tell us he's doing that. What is the distinction between an expansion column and a connector column? Your Honor, an expansion column is what does the work of a stent. It is the metal, and it's not a region of space, it's metal. An expansion column is the metal that, upon inflation of the balloon, expands and provides the architecture holding the stent open. Now, in some earlier... Do connecting struts not play a similar role, at least to some extent? They do not, Your Honor. In fact, in the primer, Dr. Zhang explains that in order to maintain maximum flexibility, they don't play that role. Early stents, this court has some familiarity with the Palmaz stent, for example, didn't have connecting columns, at least as Dr. Zhang described. It was all... They basically brought the expansion columns next to each other. What many stent engineers did subsequently was separate the expansion columns, what maintained the artery open, and then they had... But, of course, if you just do that and don't connect them, the stent falls apart, and so you create connecting columns. And then there's a whole body of R&D and patents that say, what's the ideal shape and structure and alignment of those connectors between the expansion columns? Well, the connecting columns were introduced to avoid the cutting of the stent. Correct, that's... The original stent. Correct, that was one of the reasons to avoid foreshortening of the stent, and you expanded it to give flexibility. There were any number of reasons, but Your Honor's correct. That was one of the reasons. Why not consider the connecting columns also as connecting columns? Don't they have to expand at the same time, to the same degree as the expanding columns? Well, think of it this way, Your Honor. What expansion columns do is expand this way to press against the stent wall. Connecting columns expand this way as the balloon expands to hold the expansion columns together. If you were to do a force analysis, and if you've ever seen the trial transcripts from the stent liability trials, a lot of this has to do with force analysis. The connecting columns don't provide, at least in any material way, outward expansion force. They don't prevent the artery from collapsing back on itself. What their job is preventing the expansion columns from spinning off into the artery. They're holding the pieces together that provide the expansion force. That's the role of the connecting structure. But that doesn't just present a fact issue. I think it's what Judge Lin was suggesting before. As to whether in your micro column here, the rib could be appropriately considered to be connecting struts, as well as expansion struts, or only expansion struts. And, you know, why not have expert testimony about what these things are? Maybe it's not really a claim construction issue. Maybe it's a question of fact. Your Honor, I would agree with you were it not for the fact that these terms, as I suggested, have commonly understood meanings. And that is what the court adopted. And Dr. John agreed that under these common definitions, there is no dispute of fact. It is the effort to redefine the common without any express discussion in the patent that would, in theory, create a fact issue. But under the common definition, under the accepted nomenclature, there is no fact issue. And that's why there was the stipulation. Just to point you one more time to the primer. The accepted nomenclature is the accepted nomenclature that something can, along the same time, be an expansion strut, a connecting strut. Your Honor, we have never seen, and certainly Dr. John has never presented, an example of that. That there's any R&D, there's any patent, there's any article, there's anything in the art that suggests that what people call a connecting strut is also an expansion strut. That's a fact question. This wasn't presented to the district court as a fact issue. It's not being presented to us as a fact issue. That's for some later stage of the proceedings. And it looks as though you're asking us to determine as a factual matter, based on industry practice and all that stuff, that an expansion strut can also be a connecting strut. I don't know. How do I know? Your Honor, I acknowledge that there's a bit of a fuzzy line. If I ask a baseball player how many doubles he had last year, and he responds, well, I had 50, and really he had 25 doubles and 25 triples, and he says, well, a triple, I also got two bases there. In theory, that's a fact question. But everyone understands in the world of baseball that a double is two and only two bases. Properly applied, properly defined, we know how many doubles that player hit. There is no dispute. Properly defined, there is no dispute here. There is no fact issue here. Looking at 1633 again, John Krimer, connectors in a connector column link the two adjacent expansion columns. That's John's definition of a connecting column. Yeah, but why couldn't a reasonable juror read that claim directly on the structure that we were looking at at page 19? John was free to make that argument. He could have fought after the claim construction hearing and said, even though I lost these important terms, we're still going to try to convince you, Your Honor, that summary judgment is inappropriate, that this should get to a jury, and we're going to try to convince a jury under this claim construction that they're still infringement by defendant's product. Dr. John himself acknowledged, though, that he could not present such a fact issue to a jury under this construction, that once you acknowledge that connector struts connect adjacent expansion columns, that the game is over, that there's nothing to fight about. Similarly, the notion that expansion columns and connector columns can overlap, that a single piece of metal can perform both roles, and that's really what this is about, as Your Honor suggested in his opening questions, that you can double count metal. Well, that's contrary to the presumption that this Court has stated that two different claim terms are assumed to refer to two different concepts, two different structures. Well, their arguments are in 112-6. I mean, I think both cases... One case they're referring to is 112-6. I believe that there are a number of cases that suggest that if there are different claim terms in a claim, that those terms are assumed to refer to different things. And I acknowledge that the plaintiff's case... It's a presumption. Your Honor, it's a presumption, not an ironclad rule. You're right. But in this case, there is literally nothing in the record, not a shred of evidence, that supports plaintiff's position on the disputed issues. They say hypothetically this could be the case. Hypothetically, there's nothing that precludes X or Y or Z. But they don't point to anything in the intrinsic record, in the specification, in the file wrapper, in the prior art, in Dr. Squire's testimony, in Dr. John's primer, anywhere where the positions that John has taken with regard to these claim terms are supported. So we're left with this vast body of intrinsic and extrinsic record that says that Judge Phillips' construction is correct, and nothing but the statement that you're reading too much in on the side of the plaintiff. Even the examiner, and I believe this is at A562, in reviewing the Pinkasic reference, the examiner herself sketched in, when comparing the prior art to patent, sketched in in color the various elements and applied the nomenclature that's now in dispute to the prior art. The examiner understood that these terms had meanings in the art. The examiner herself applied these terms in discussing the prior art. Where does the term solely come from? It comes from our effort to make the claim construction meaningful for a liability perspective. We are guilty of what Judge Linn accused us of doing. But it's also entirely consistent and entirely appropriate in light of how that term is used in the art. It's not a good analogy, but going back to the baseball analogy. If I said, how many doubles did you hit last year, Judge Gajarzo? If I knew that you were intending to count triples and home runs in that total, because, after all, you had also gotten two bases, I would be tempted to say, how many doubles, and by that I mean two, and solely two bases, did you get at the play? That's what happened here. Immediately presented. That's not a term of art. Connecting strut and expansion strut are terms of art. The definite, using another analogy, if I tell a chess... It's solely a term of art. No, it's not a term of art. But the concept of solely is understood by those in the art to be part of what's in expansion columns and connector columns. You mentioned that expansion strut and connector strut, they have understood art-specific meanings. How does that relate to all of the issues that are presented here? Tubular, solely, unattached to each other, adjacent? Your Honor... How does that relate to whether or not expansion strut and connector strut have art-related understood meanings? Your Honor, as to tubular, as I believe he suggested in our brief, we don't think that's a material dispute, and we would not have addressed it but for... In fact, I think why... Again, Your Honor, because Dr. John said that he would drop the case, he would set it up to appeal, he would end the case if we agreed to that stipulation, and it's a lesson learned from my perspective. And again, to the extent that that presented an improper posture, we will take that lesson forward in a future case. But from our perspective, we did what we thought was right for the client, which is to get it out of the trial court and take an appeal up of a claim construction that we believe is entirely consistent with the record, intrinsic and extrinsic. The word solely, the problem is the word solely really isn't very descriptive of the dispute as it's come out and has been articulated by the court here this morning. Because solely could include something other than expansion strut. It seems as though the real dispute here is whether this red micro-column we consider both to be an expansion strut and a connecting strut, and yet that's not the way the parties have framed the issue. Your Honor, you're correct that that is the issue. The question is, can you double count metal? What we think is unambiguously an expansion column by any definition, and as Your Honor correctly points out, if what we believe by any definition is the connecting strut is the blue, there is no case here. What they need to do in order to present a triable issue of fact is to say we can double count that metal, that what is unambiguously part of the expansion, that sinusoidal region that Mr. Mundell referenced, we can double count that. We can say it is both expansion and connector. And we say as those terms are used, as that nomenclature is used in the art, that can't be right. That's not what the nomenclature is. That those in the art, be it Dr. Squire, Dr. John, the intrinsic record is reflected, the patent examiner is discussing the case of reference, whatever the case may be, they understand that there are expansion columns and connector columns, expansion struts and connector struts, and that one and the same piece of metal cannot be both. Well, I mean, certainly something can't be connected to itself. So to the extent the claim calls for an expansion strut from a series to be connected to connecting struts, the same piece of metal can't be connected to itself. But if the larger, what is referred to as macro expansion elements here, are connected to each other by the smaller sinusoidal pieces in the way described in the claim, why does that not present an intrinsic question? Your Honor, as we discussed in our brief, you can take your pen and draw a line connecting any piece of metal on a stem  and one of the difficulties in patenting a stem is how do you describe what is a wire mesh in a way that's meaningful to those in the art. How do you say, I have developed a new way to build this cage and I'm going to now describe it in words because we can't draw a plain picture. We have to describe it in words. And one of the ways we do that is by agreeing on a toolkit, a set of nomenclature that we all understand and that doesn't vary from patent to patent, from product to product. And so we've developed this over the years and Johnson & Johnson, Boston Scientific and Medtronic have been fighting on this court for more than a decade on these terms. And as to these basic terms, they don't disagree. But when we have Dr. John come in here and try to vary the basic term, essentially we run into the problem Your Honor suggests.  And make anything a connecting strut or anything an expansion strut. But this is a two-dimensional description or in words, a verbal description or a written description of a physical object. The question is what does the plane recite? What is the meaning of the terms in the plane? The plane describes a structure and describes components and their connection to each other. Then the question as to infringement is something for the jury, something for the dryer of facts. And whether something swivels around hither and yon meets those terms or not is a fact question, not a plain construction question. The question is what does that plane describe when it calls for expansion struts, connecting struts, when you're doodling offset, et cetera. And Your Honor, I agree with the general sentiment. But in this particular case, when we have Dr. John himself telling my client that the definition of a connector strut is one that connects adjacent expansion props, that that's what a connector strut is, I would suggest that Markman counsels us that it's appropriate for the court to, in essence, where Markman here is just crafting jury instructions, to craft a jury instruction to say a connector strut connects adjacent expansion props. That's Dr. John's own definition. And I could go through all of them and have the same discussion. Would that definition cover a situation where the two interlocks in the center zero occurs backed by practically interlocking? If they were interlocked by traditional nomenclature, there wouldn't be a connecting strut. Now, there is a sense in which you can nest them, but not interlock them. Not nest them, interlock them. Interlock them, as the original, I believe that the original Palmas stent was similar to that. So we have connecting struts there? In fact, Dr. John says there were no connecting struts there, that there were no connecting columns there. And that was the problem with the stent. He acknowledges in the discussion of prior art and in other writings, including the trimmer, that was one of the problems with the early stent, was being just expansion columns, essentially, adjacent to each other. I see that amount of time. Thank you for your time. Council is incorrect in saying that these are columns, expansion columns and neckler columns are traditional state terminology. This, in fact, is Dr. John's unique language. This did not appear in any of the prior art. In Palmas, at A994, they discuss prostheses joined by connector members. At Fishel, which is at A1013, they talk about members, or rather cells, and undulating struts. Kinchasic, A1004, talks about connected cells and flexible connectors. Lau, at A1040, talks about cylindrical elements and connecting elements. And Orth, at A1029, talks about cylindrical elements and connecting members. Your Honor, this nomenclature of columns, connecting columns and expansion columns, is unique to Dr. John. It did not appear anywhere in the literature until Dr. John wrote his 021 and 0734 patents. So Council is simply wrong in saying that we are distorting terms that have a well-established meaning. In fact, it is Boston Scientific that has added language solely unattached and adjacent to otherwise clear, plain, ordinary-meaning language, and Boston Scientific has taken those words out of the descriptions of preferred embodiments and incorporated them back into the claimed language itself. And Phillips teaches that that's wrong. MBO Labs teaches that that's wrong. There's an unbroken line of cases from this court that says you just can't do that. And for that reason, the case should be reversed. Just to address very briefly the other stuff that he says, the primer was written six years after the patent was even issued. And it describes general stance. It does not talk about or purport to define the terms of the patent. And this court has recognized on repeated occasions that it's inappropriate to rely on that sort of thing. The reference to the examiner doing something, that's not in the record before this court. I don't know what he's talking about, because I checked. The reference is not there. It's not in the statement. Thank you, Mr. McGill.      Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.